E.D.N.Y. LBR 9004-2(c)
Hearing Date and Time:
October 15, 2015 at 11:45am

Dennis Houdek, Esq.
305 Broadway, Fourteenth Floor
New York, New York 10007
(212) 822-1470
Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In Re:

                              Chapter 7

**ADVANCED FLEET MAINTENANCE, INC.,**        Case No. 1-13-44173

                              Debtor.

-------------------------------------------------------------------X

**ROBERT L. GELTZER, as Chapter 7 Trustee of
ADVANCED FLEET MAINTENANCE, INC.,**

                         Plaintiff,

    v.                                    Adv. Pro. No.
                                           15-01083-cec

**ADVANCE FLEET MAINTENANCE LLC,
AFM MAINTENANCE LTD. and FRANK
ALMONA,**

                         Defendant.

**-------------------------------------------------------------------X**

## DEBTOR'S RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

DENNIS HOUDEK, ESQ., an attorney duly admitted to practice law in the State of New York and in the Eastern District of new York, affirms the truth of the following statements under the penalties of perjury:

1. I am the attorney for the Debtor Advanced Fleet Maintenance, Inc. in this Chapter 7 proceeding ("Debtor" hereinafter), and as such I am fully familiar with all of the facts, background and circumstances of both this Chapter 7 proceeding as well as this Adversary Proceeding. I submit this Affirmation, in my capacity as an officer of the Court, to alert the Court to what lies ahead on this Adversary Proceeding.

2. Before proceeding to outline the logical and procedural difficulties with this Adversary Proceeding moving forward, as an initial matter, in an effort to reduce the burden on this Court, I note that this Affirmation will not duplicate unnecessarily as Exhibits documents that are available on-line as part of this Court's file, as this Court can and must take judicial notice of the contents of its own file. See, e.g., Federal Rule of Evidence 202, made applicable to Bankruptcy Courts by Federal Rule of Evidence 101; In re Aerial Transit Co., 190 Bankr. 464 (Bankr. S.D. Fla. 1990) (judicial notice should be taken so as not to "grind the same corn twice"); In re Applin, 108 Bankr. 253 (Bankr. E.D. Cal. 1989) (judicial notice of "basic filings" in bankruptcy proceeding). Indeed, this Court may even take judicial notice of prior judicial proceedings though in a different court and involving different parties. Matter of Justin EE, 153 A.D.2d 772 (3d Dept. 1989); Mendelovitz v. Cohen, 26 Misc.3d 1230(A) (Sup. Ct. Kings Cty. 2010).

Specifically, this Affirmation will refer to documents available on-line as part of (a) this Chapter 7 case (hereinafter denoted as "Docket No. ___ in the Main Case"); (b) this Adversary Proceeding (hereinafter denoted as "Docket No.___ herein"); (c) the soon to-be discussed McCord Adversary Proceeding.

3. In this Adversary Proceeding, I note that I am conflicted out from representing any of the defendants because the gravamen of the Complaint is that the defendants misappropriated assets from the debtor, and logically, one cannot represent both the alleged misappropriator and the alleged misappropriatee. Similarly, the alleged main misappropriator, Frank Almona, is also the principal of the debtor, and much ink has been spilled on the inherent conflict between representing both the corporate entity and the corporate principal at the same time.  However, as an officer of the Court and a fiduciary required to bring this proceeding to an expeditious conclusion, and as Debtor's counsel entitled under the Rules to both service and notice of this motion, I submit this Affirmation to alert the Court and counsel to the following facts that make this Adversary Proceeding a potentially improvident exercise of the Trustee's discretion.  These facts will be set forth <u>seriatum</u> in no particular order of importance.

4. First, there already is a default judgment against the Debtor in the principle amount of $56,585.20 on an adversary proceeding in this very Court entitled <u>McCord v. Advanced Fleet Maintenance, Inc.,</u> Adv. P. No. 1-13-01176-ess (the "McCord Adversary Proceeding" hereinafter).  That Adversary Proceeding was commenced on June 5, 2013, barely over one (1) month before the filing of the Chapter 7 Petition in this proceeding, with a default judgment being entered on October 14, 2013 against the Debtor, barely over three (3) full months after the filing of the Chapter 7 Petition in this proceeding.

(<u>See</u> Docket No. 1 in the McCord Adversary Proceeding, consisting of the Complaint therein, and Docket No. 8 in the McCord Adversary Proceeding, consisting of the default judgment therein). Distilled to its essence, that Adversary Proceeding sought and won a default judgement avoiding $56,585.20 paid by that case's debtor by checks to the Debtor herein. These checks, are, of course, the classic accounts receivable and are also one of the subjects of this Adversary Proceeding. <u>See</u> Docket No. 1 herein at paragraph 18.

5. Accordingly, **IF** the Trustee were to win in **THIS** Adversary Proceeding, he would have to turn over the first $56,585.20 plus over two (2) years' interest to Trustee McCord, as page 2 of the judgment entered in that Adversary Proceeding (Docet No. 8 in the McCord Adversary Proceeding) provides, <u>inter alia</u>, that Trustee McCord (a) "shall have all of the rights and remedies afforded under the law to a judgment creditor"; (b) "may enforce the Judgment against the Defendant as allowed under the applicable law" and (c) "shall have execution hereon" and "may do such things….as may be necessary to enforce this Judgment".

6. The McCord Adversary Proceeding was duly listed on Schedule F of the Debtor's Schedules in this proceeding, because, at the time of that Schedule's filing, this Court had yet to enter a default judgment against the Debtor in the McCord Adversary Proceeding. (<u>See</u> Docket No. 9 in the Main Case herein, consisting of the aforesaid Schedule F). It was also duly listed in Section 4 of the Debtor's Statement of Financial Affairs (Docket No. 10 in the Main Case). As will be discussed later herein, <u>infra</u>, the McCord Adversary Proceeding was but one of two unsecured creditors listed in this case and, now that it has been was subsequently declared a "judgment creditor" by this Court, that leaves but one

unsecured creditor herein, and that creditor is pursuing his own parallel, duplicative (and non-stayed) litigation against the main defendant in this Adversary Proceeding.

7. Per 28 U.S.C. Section 1961(a), post-judgment interest has been running for over two (2) years on the McCord Judgment, and, pursuant to 28 U.S.C. Section 1961(b), that interest is to be compounded yearly. Accordingly, the estimated current amount due on the McCord Judgement is just under $69,000.

8. As a "judgment creditor" against the Debtor herein, it would appear that Trustee McCord is an indispensable party entitled to service in this matter. At the very least, it appears that this Adversary Proceeding usurps his own, independent role as a "judgment creditor".

9. On September 3, 2014, at the Debtor's 2004 examination, the Trustee introduced as an Exhibit an excerpt (Exhibit "A" hereto) from the deposition of defendant Frank Almona in a state court action entitled <u>Michael Ricatto v. Frank Almona, Thomas Almona, and Advanced Fleet Maintenance, Inc.</u>, Supreme Court, Kings County, Index No. 15799/11. In that deposition, Almona testified that the "major account" that stopped paying the Debtor and lead to its going out of business "was Atlantic Express school bus". This "major account" was the very same debtor in the McCord Adversary Proceeding, once again underlining the duplication of this Adversary proceeding with the McCord Adversary proceeding.

10. In addition, cursory examination of Exhibit "A" hereto reveals that Almona testified that the Debtor's "[e]quipment" and "[m]achinery" was not owned by the Debtor at all, but "actually belonged to a fellow named John Limmotta…[one of] the original partners in All Boro Engine", a non-defendant in this Adversary Proceeding. The Trustee

investigated All Boro Engine as a potential defendant, seeking, procuring and examining all of its books and records prior to initiating this Adversary Proceeding. The significance of these facts will be explained shortly, but first this Affirmation must turn to a brief discussion of only general unsecured creditor in this Chapter 7 proceeding.

11. As touched on previously, in addition to this Adversary Proceeding, there is a parallel state court litigation launched against the Debtor's principal, Frank Almona, also the main defendant in this proceeding, by the **only** general unsecured creditor herein, to wit, an action entitled Michael Ricatto v. Frank Almona, Thomas Almona and Advanced Fleet Maintenance, Inc. , Supreme Court, Kings County, Index No. 15799/11 ("the Ricatto action" hereinafter), that essentially seeks the same relief as sought in this Adversary Proceeding. Needless to say, the only part of that state court action that was stayed was that pertaining to the Debtor herein, while the action against the main defendant herein (Almona) continues. Thus, any recovery for unsecured creditors would be paid over to a creditor who is already suing for the same monies in state court. See, e.g., Docket No. 9 in the Main Case at Schedule F and Docket No. 10 in the Main Case, consisting of the Statement of Financial Affairs, at Paragraph 4, both listing the Ricotto action.

12. Turning to the specific allegations of this Adversary Proceeding, the gravamen of the Complaint herein (Docket No. 1 herein) begins at its Paragraph 18, which alleges that "[a]t some point during the period between July 8, 2007 and December 31, 2008, Almona knowingly and intentionally caused the Debtor's assets, including, without limitation, the entirety of the Debtor's business operations, its equipment, its accounts receivable and its goodwill (collectively, the "Assets") to be transferred to [defendant]

Advance Fleet [Maintenance LLC] without adequate consideration having been received by the Debtor in exchange ".

13. Continuing on, Paragraph 19 of the Complaint herein (Docket No. 1 herein) goes to allege that defendant "Advance Fleet [Maintenance LLC] operated the same business as that of the Debtor, at the same location, with the same customers, with the same or substantially the same personnel as that of the Debtor, and used and benefitted from the Assets of the Debtor in said Defendant's operations".

14. Similarly, Paragraph 20 of the Complaint (Docket No. 1 herein) alleges that "[i]n or about 2010, Almona caused the Debtor's Assets to be transferred by [defendant] Advance Fleet [Maintenance LLC] to [defendant] AFM [Maintenance Ltd.] without [defendant] AFM [Maintenance Ltd.] providing any consideration therefor to the Debtor in exchange".

15. In addition, Paragraph 21 of the Complaint (Docket No. 1 herein) alleges that "[defendant] AFM [Maintenance Ltd.] operated the same business as that of the Debtor, with the same or substantially the same personnel as that of the Debtor, and used and benefitted from the Assets of the Debtor in said Defendant's operations. At the time that Almona transferred the Assets from [defendant] Advance Fleet [Maintenance LLC] to [defendant] AFM [Maintenance Ltd.], he moved the business operations to a new location, in Woodside, New York". The Complaint alleges that all of this caused the debtor to suffer damages that are "presently estimated to be in excess of $230,000". See, e.g., Complaint herein (Docket No. 1 herein) at its Paragraphs 29-30, 35, 42, and 48.

16. First of all, the entire premise of the Adversary Proceeding, i.e., that "[a]t some point during the period between July 8, 2007 and December 31, 2008, Almona knowingly

and intentionally caused the Debtor's assets…to be transferred to [defendant] Advance Fleet [Maintenance LLC] without adequate consideration having been received by the Debtor in exchange ", is belied by the Debtor's final tax return.

17. Specifically, the Debtor's final tax return, for tax year ending "12/21/06" (Exhibit "B" hereto), shows at its page 3, Schedule K, Section 2(b), that its business is "Repair Bus Engines". At its page 4, Schedule L, Section 2, it shows "[t]rade notes and accounts receivable" of "$266,998" were held at the "[beginning] of tax year", while nothing was held at the "[e]nd of the tax year". That same section shows "[c]ash" of "$5,883" on hand the "[b]eginning of tax year", while nothing was held at the "[e]nd of tax year". That same Schedule L, Section 10a also shows that and "[b]uildings and other depreciable assets" totaling "$46,392" were held at the "[beginning] of tax year", but when "accumulated depreciation" was subtracted in Section 10b, the net result was only "$4,982", and nothing was held at the "[e]nd of the tax year". The final page of the Debtor's federal tax return, Form 1120, entitled "Detail Report", sets forth three (3) separate items that comprised the aforesaid "[b]uildings and other depreciable assets" totaling "$46,392" at the "[beginning] of tax year", all three (3) of which had a "[d]ate placed in service" of "1/2/2000" and which had the following "[c[ost or other basis": (a) a "[c]omputer with a "[c]ost or other basis" of $7,534"; (b) a "[f]ork lift" with a "[c]ost or other basis" of $4,000"; and (c) "[l]easehold improvements" with a "[c]ost or other basis" of $34,858". With respect to the "computer", it was thrown in the garbage. With respect to the "forklift", per the tax return it was depreciated to zero and MAY have a residual value of $1,000. With respect to the "leasehold improvements", they were

8

abandoned when the bank foreclosed on the landlord's mortgage and proceeded to knock down the building.

18. Accordingly, the debtor's final tax return (Exhibit "B" hereto) shows the Debtor was out of business completely by the end of 2006, a full seven and one-half years before the July 8, 2013 filing of this chapter 7 proceeding, well beyond the state six (6) statute of limitations for the fraudulent conveyances alleged in the Complaint herein (see Docket No. 1 herein at Paragraphs 18-21). Of course, a cause of action that expired prior to a bankruptcy filing cannot be revived by the Trustee, even if he files an Adversary Proceeding within 2 years from the filing of the Petition. See, e.g., Crawford v. LVNV Funding, LLC, 738 F.3d 1254 (11th Cir. 2014); Young v. United States (In re Young), 233 F.3d 56, 59 n.3 (2000).

19. Here, the last tax return for the debtor was filed for the year ending December 31, 2006, and no activity occurred after that date. The Complaint alleges that that dormant corporation then transferred assets to a now defunct LLC, which then transferred assets to defendant AFM. There are no statutes of limitation that this Adversary Proceeding falls into. Code Section 548(a) allows the Trustee to avoid transfers that were "made or incurred on or within 2 years before the date of the filing of the petition", i.e., "on" or after July 8, 2011. Code Section 544(b) allows the trustee to "avoid any transfer….that is voidable under applicable law by a creditor holding an unsecured claim" against the debtor. Under New York's state fraudulent transfer law, this provides for a 6-year statute of limitations, meaning that any action had to be commenced by January 1, 2013, well before the July 8, 2013 filing herein. Code Section 546(a) provides that an avoidance proceeding may be filed within "2 years after the entry of the order for relief", i.e., by

July 8, 2015.  It should be noted that this adversary proceeding was filed the very day before the expiration of this two year statute of limitations.  However, this two year period is only applicable if the applicable time period did not expire before the filing of the bankruptcy petition.  See Code Section 108(a), and is thus time-barred.

19.  Thus, the Complaint, distilled to its essence, alleges that (a) the debtor, which ceased operations on December 31, 2006, 7 ½ years before the filing of the Petition herein; (b) transferred unspecified assets to a non-debtor LLC 7 ½ years before the filing of the Petition herein; which then (c) transferred unspecified assets to another non-debtor entity in 2010.  Thus, the Trustee cannot revive a transfer made to a non-debtor that has been extinguished by the statute of limitations, much less invoke this Court's limited jurisdiction over a subsequent non-debtor to non-debtor transfer.

20.  Even if this Court were to completely disregard the debtor's final tax return and credit every allegation set forth in the Complaint herein, **none** of the hypothetically recoverable proceeds would ever flow down to the only general unsecured creditor herein, who, as noted previously, is pursuing his own unstayed, parallel and duplicative state court litigation against the main defendant in this Adversary Proceeding.  The law is clear that the trustee should not pursue an action when all of the equity is encumbered if there will be no benefit to the estate; the trustee should not liquidate property solely for the benefit of secured creditors, and cannot recover fees for same. See, e.g.,  In re Williamson, 94 Bankr. 958 (Bankr. S.D. Ohio 1988); In re Landreneau, 74 Bankr. 12 (Bankr. W.D. La. 1987).

21.  In this case, Debtor's Schedule E (Docket No. 9 in the Main Case) shows a federal tax liability of $140,000. This listing is a misnomer, because, as to federal taxes,

26 U.S.C. Section 6321 provides that the amount of any unpaid tax debt shall be a lien "upon all property and rights to property, whether real or personal" belonging to the taxpayer. The lien attaches immediately upon assessment of the tax. In re McTyre Grading & Pipe, Inc., 193 Bankr. 983 (Bankr. N.D. Ga. 1996). The lien is often referred to as a "secret lien" because it not only attaches upon assessment, but without notice to anyone. A tax lien is a statutory lien rather than a judgment lien, and cannot be avoided pursuant to Code Section 522(f). With respect to personal property, the IRS lien is a "blanket lien", encumbering all of the taxpayer's interest in any non-real property. U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989); U.S. v. Jones, 260 Bankr. 415 (E.D. Mich. 2000).

22. Accordingly, as a classic "statutory lien", the debtor's $140,000 federal tax liability could only be avoided by the Trustee if he had brought an Adversary Proceeding to avoid that statutory lien pursuant to Code Section 545 within two (2) years of the filing of the bankruptcy petition, i.e., by July 8, 2015, over three (3) full months ago. Needless to say, that time has come and gone.

23. Similarly, the only **potential** general unsecured creditor, Michael Ricotto, may not be a general, unsecured creditor at all, but may have the classic landlord's lien set forth in Code Section 545. Specifically, the Lease between the Debtor and creditor Michael Ricotto (Exhibit "C" hereto), on its page 2, in its Section 7, entitled "**FIXTURES AND TRADE FIXTURES",** provides that "[a]ll improvements made by [the Debtor] to the Premises which are so attached to the Premises that they cannot be removed without material injury to the Premises, shall become the property of [the Landlord] upon installation…All property of [the Debtor] remaining on the Premises

after the last day of the Term of this lease [5/31/09] shall be conclusively deemed abandoned and may be removed by [the Landlord]…."

24. In addition, , page 3 of the Lease (Exhibit "C" hereto), at its Section 9, entitled "**LESSOR'S LIEN",** provides that "[a]s additional security, [the Debtor] acknowledges, to the extent allowed by applicable law, the [Landlord's] right to hold and sell with due legal notice all property on or to brought on the Premises in order to satisfy unpaid rent, expenses and utilities.  No property of [the Debtor] brought into the Lease Premises shall be removed by [the Debtor] other than in the ordinary course of business as long as [the Debtor] is in default in the terms of the lease".

25. The Lease was produced to the Trustee on 12/9/13, nearly two (2) full years ago.

26. As noted previously herein, part of Ricotto's parallel, unstayed state court litigation is a claim that he is owed a vast amount (just under $2 million) for unpaid rent. Pursuant to the lease, he is clearly given a security interest (the classic "landlord's lien" codified in Code Section 545) in the Debtor's equipment and machinery, which covers the Trustee's Adversary Proceeding allegation that such "equipment and machinery" was fraudulently conveyed to the defendants.  Accordingly, as a classic "landlord's lien", the debtor's conveyance of any "equipment and machinery" could only be avoided by the Trustee if he had brought an Adversary Proceeding to avoid that statutory lien pursuant to Code Section 545 within two (2) years of the filing of the bankruptcy petition, i.e., by July 8, 2015, over three (3) full months ago.  Needless to say, that time has come and gone. Since the  Financial Statement of defendant AFM Maintenance Ltd. for the year ended December 31, 2010, shows  "machinery and equipment" of "$177,435" after depreciation, this is a huge portion of the Trustee's claim.

27. In addition, the ability of the Trustee to execute on any judgment against the defendants is, at best, dubious. Specifically, the vast majority of defendant AFM Maintenance Ltd.'s business is based on its status as Allison Transmission Independent Dealer, a status that arose after the demise of the Debtor and which is personal to the Debtor's principal, i.e., the Allison business will be pulled if the Trustee takes over the AFM business.

28. Specifically, the first applicable Independent Dealer Agreement, entered into in August 6, 2007, (Exhibit "E" hereto), after the demise of the Debtor, provides at tis second page, in the last full paragraph immediately preceding the "SECOND" Section, that "[t]his Agreement and any right or responsibility under this Agreement may not be transferred, assigned, delegated or sold by Dealer without the prior written approval of Distributor". On page three, at its Section "Sixth", entitled "Management and Ownership", it is provided that:

> Distributor has appointed Dealer and has entered into this Agreement in substantial reliance upon…
> (3) the agreement of Dealer that the person(s) named in the Ownership and Active management Addendum will continue to own both of record and beneficially the percentage stated therein.
> Dealer agrees that the continuation of the business relationship between Dealer and Distributor under this Agreement is conditional upon Dealer continuing to have Principal Manager(s) and Principal Owner(s) acceptable to Distributor.

This agreement has been continued to this day.

29. Accordingly, any attempt by the Trustee to take over the business will automatically cancel the Allison agreement and rob the defendant AFM of 70% of its business, delivering the classic Pyrrhic victory to the Trustee, an uncollectable judgment.

30. Finally, the motion for a default judgment is procedurally infirm. Obtaining a default judgment is a three-step process under Fed. R. Civ. P. 55, which is incorporated by Bankruptcy Rule 7055. First, one must file a written request for the entry of the default. Fed. R.Civ. P 55(a); Bankruptcy Rule 7055. Second, one must file an affidavit in support of the request that proves the party against whom default is sought has failed to plead or otherwise defend. Fed. R.Civ. P 55(a); Bankruptcy Rule 7055. Third, one must submit an "Entry of Default". The court clerk enters the default. (Official Bankruptcy Form No. B 260). It is only after these initial three steps have been performed that the party may proceed to file a motion for entry of a default judgment. Needless to say, one will search the Court's Docket in vain for any written entry on Official Bankruptcy Form No. 260 by the Clerk for a written "Entry of Default".

31. When the motion for a default judgment is filed, a proposed judgment must be submitted with that motion. Fed. R.Civ. P 55(b); Bankruptcy Rule 7055; Official Bankruptcy Form No. B 261B. Indeed, this requirement is codified for all motions by EDNY LBR 9013-1(c). Once again, one will search the Court's Docket in vain for any proposed order filed with the motion for default judgment.

32. Indeed, this procedure set forth in a memo to "All Bankruptcy Judges" dated "June 2013" and entitled "PROCEDURE FOR OBTRAINING DEFAULT JUDGMENTS" that can be found at www.nvb.uscourts.gov/downloads..../all-default-judgments.pdf.

33. Moreover, Courts examining this issue have unfailingly held that a written entry of default by the court clerk is a necessary prerequisite to a judgment by default. Thus,

obtaining a judgment by default is a two-step process. The clerk enters the defendant's default, and then—and only then—may the court or the clerk enter a default judgment. Federal courts have in various ways expressed the necessity of making default a two-step process. Some have stated such outright. See, e.g., Dahl v. Kanawba Inv. Holding Co., 161 F.R.D. 673, 683 (N.D. Iowa 1995) ("By its terms, [Rule 55] requires two steps before entry of a default judgment: first, pursuant to Fed. R. Civ. P. 55(a), the party seeking a default judgment must have the clerk enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend; second, pursuant to Fed. R. Civ. P. 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)1) or (b)(2) of the rule"); see also Eitel v. McCool, 782 F.1470, 1471 (9th Cir. 1986) (faulting plaintiff for failing "to understand the two-step process required by Rule 55"); Tarbell v. Jacobs, 856 F.Supp. 101, 104 (N.D.N.Y. 1994)("prior to the issuance of a default judgment under Rule 55(b), there must be an entry of default pursuant to Rule 55(a)").

34. Other courts have stated the matter less directly. See, e.g., O.J. Distributing, Inc. v. Hornell Brewing Co., Inc., 340 F.3d 345, 352 (6th Cir. 2003) ("Rule 55 permits the clerk to enter the default when a party fails to defend an action as required. The court may then enter a default judgment")(internal citations omitted); Shepard Claims Serv., Inc. v. Darrah & Assocs., 796 F.2d 190, 193 (6th Cir. 1986) (noting that "entry of default is just the first procedural step on the road to obtaining a default judgment").

35. Collectively, these and other similar decisions lay to rest any notion that a prior existing Rule 55(a) entry of default is unnecessary or superfluous to obtaining a judgment of default.

**E.D.N.Y. LBR 9013-1(a) REQUEST FOR WAIVER OF BRIEF**

36.  Because all of the legal principles at issue forth herein are black-letter law, and are discussed in this submission, it is respectfully requested that the requirement of E.D.N.Y. LBR 9013-1(a) that a separate memorandum of law accompany this submission be waived.

Dated:  New York, New York
             October 14, 2015

    __s/_____
    DENNIS HOUDEK, ESQ. (DH-8466)
    *Attorney for the Debtor*
    305 Broadway, Fourteenth Floor
    New York, New York  10007
    (212) 822-1470